IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EUGENIA CHAVIS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No.  ADC-17-1123 |
| | * | |
| NANCY A. BERRYHILL, | * | |
| Acting Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

On April 24, 2017, Eugenia Chavis ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 (the "Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 15 and 18), and the response thereto (ECF No. 19), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the decision of the SSA is AFFIRMED.

### PROCEDURAL HISTORY

On December 21, 2012, Plaintiff filed a Title II application for a period of disability and DIB and a Title XVI application for SSI alleging disability beginning on May 16, 2011. Her claims were denied initially and upon reconsideration on April 30, 2013 and January 14, 2014, respectively. Subsequently, on February 12, 2014, Plaintiff filed a written request for a hearing and, on February 25, 2016, a video hearing was held whereby Plaintiff appeared in Baltimore,

1

Maryland and an Administrative Law Judge ("ALJ") presided over the hearing from Baltimore, Maryland. On April 12, 2016, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act [("the Act")] from May 16, 2011, through the date of this decision." *See* ECF No. 6 at 30. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on March 2, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On April 24, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's denial of Plaintiff's disability applications.[1] Plaintiff filed a Motion for Summary Judgment on November 7, 2017 and Defendant filed a Motion for Summary Judgment on January 12, 2018.[2] This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment, including the response thereto.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the

---

[1] On January 29, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

[2] Plaintiff responded to Defendant's Motion for Summary Judgment on January 12, 2018 in order to correct its Motion for Summary Judgment by striking its argument in A under Section IV, Subsection II. *See* ECF No. 19.

2

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the [Act], [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." (citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson*, 434 F.3d at 653 (internal citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight

accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB or SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

4

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's RFC, which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (*e.g.*, allegations of pain) using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R.

5

§ 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *1–12 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's ability to perform daily activities, activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. *Id.* at *6.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in

significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. ECF No. 6 at 31. At step two, the ALJ found that Plaintiff had the severe impairments of residuals of reconstructed feel, residuals of fractured hip, degenerative joint disease, dysfunction of major joints, psoriasis, psoriatic arthritis, chronic obstructive pulmonary disease, asthma, and migraine headaches. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 32. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 416.1567(b) and 416.967(b) except [Plaintiff] would be limited to lifting up to 20 pounds occasionally and 10 pounds frequently, standing and walking for at least two hours, and sitting for up to six hours in an eight-hour workday with normal breaks. [Plaintiff] would be limited to never climbing ladders, ropes, or scaffolds; occasionally stooping, occasionally crouching, and frequently climbing ramps or stairs. [Plaintiff] would need to occasionally avoid exposure to excessive noise. She would need to occasionally avoid exposure to environment irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas. [Plaintiff] would need to occasionally avoid the use of moving machinery and exposure to unprotected heights.

*Id.* at 34. Based on the resulting RFC, the ALJ then determined that Plaintiff was "unable to perform any past relevant work." *Id.* at 39. Finally, at step five, the ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist

in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 40.

Accordingly, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in

[the Act], from May 16, 2011, through the date of this decision." *Id.* at 41.

## DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the

record as a whole and raises four specific allegations of error on appeal: (1) that the ALJ was not

clear in his determination of Plaintiff's severe impairments; (2) that the ALJ did not properly

consider Plaintiff's medical impairments under Listing 1.02; (3) that the ALJ's RFC

determination was not supported by substantial evidence; and (4) that the ALJ improperly

considered the vocational expert's ("VE") testimony. Each of Plaintiff's arguments lacks merit

and is addressed below.

## A. The ALJ's Findings Regarding Plaintiff's Medically Determinable And Disabling Severe Impairments Were Proper.

Plaintiff contends that the ALJ failed to conclude or clarify the presence of medically

determinable and disabling severe impairments. ECF No. 15-1 at 8–9. Specifically, Plaintiff

finds error because the ALJ failed to clarify his findings of "Dysfunction of Major Joints" and

"Degenerative Joint Disease" and whether they included Plaintiff's shoulder and hand pain and

related problems. *Id.* at 9. The Court disagrees.

Although his step two analysis does not expressly mention whether the ALJ considered

Plaintiff's shoulder and hand pain in finding that Plaintiff suffered from "dysfunction of major

joints, including [Plaintiff's] knee, hip, and ankle," and from degenerative joint disease, the ALJ

did refer to "Finding Five" of his opinion. ECF No. 6 at 32. Within Finding Five, the ALJ

discussed Plaintiff's shoulder pain, stating, "In March 2012, [Plaintiff] presented for treatment

for neck and right shoulder pain following a motor vehicle collision, but there is no indication

8

that [Plaintiff] obtained additional treatment for neck or shoulder pain (Exhibit 15F/15-16)." *Id.* at 36. Furthermore, while the ALJ does not specifically reference Plaintiff's hand pain, in particular, her alleged carpal tunnel syndrome, the ALJ stated that he carefully considered the entire record, and absent evidence to the contrary, this Court should take the ALJ at his word. *See Jarvis v. Berryhill*, No. TMD 15-2226, 2017 WL 467736, at *2 (D.Md. Feb. 3, 2017) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014))). Here, the ALJ discussed the findings of Dr. Paul Barbera, who mentioned in his report that Plaintiff "is able to use her hands for fine and dexterous movements."[3] ECF No. 6 at 316. Additionally, the medical records and reports never mention hand pain, specifically carpal tunnel syndrome, as an alleged impairment or complaint nor do any of the medical reports or assessments recommend any reaching, handling, or fingering limitations for the RFC. In fact, the only mention to "likely carpal tunnel syndrome," ECF No. 15-1 at 9, in the record is when Plaintiff herself testified to such during her hearing before the ALJ. ECF No. 6 at 71–72. Further, in his discussion of Plaintiff's daily activities, the ALJ noted that Plaintiff washes dishes. *Id.* at 36. Accordingly, the ALJ considered Plaintiff's alleged shoulder and hand pain in reaching his determination.[4]

---

[3] As discussed further below, the ALJ allotted some weight to Dr. Barbera's opinion. ECF No. 6 at 39.

[4] Even if the ALJ did not consider Plaintiff's alleged shoulder and hand pain as part of her severe impairments, that omission constituted harmless error as discussed below because the ALJ's determination of Plaintiff's RFC and disability was based on substantial evidence. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal citations and quotation marks omitted)); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

## B. Substantial Evidence Supports The ALJ's Determination That Plaintiff Does Not Meet Listing 1.02.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that her condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). The burden of proof is on the claimant to show that she meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (internal citations omitted).

Remand is appropriate where the "ALJ's opinion failed to apply the requirements of the listings to the medical record." *Id.* at 291–92; *see Fox v. Colvin*, 632 F.App'x. 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory analysis, at step three necessitated remand). In evaluating whether an ALJ's listing comparison was proper, however, the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety. *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md. 2002) (holding that remand is not warranted "where it is clear from the record which [L]isting . . . w[as] considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the reviewing c]ourt readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion").

Here, Plaintiff argues that the ALJ failed to properly evaluate her medical impairments under Listing 1.02. *Id.* at 9. Listing 1.02 states:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;[5]

---

[5] Listing 1.00(B)(2)(b) defines an inability to ambulate effectively as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent

or

> B. Involvement of one major peripheral joint in each upper
> extremity (i.e., shoulder, elbow, or wrist-hand), resulting in
> inability to perform fine and gross movements effectively, as
> defined in 1.00B2c.[6]

20 C.F.R. pt. 404, subpt. P, app. 1, 1.02. During his step three analysis, the ALJ explained why

Plaintiff failed to meet the requirements of Listing 1.02:

> ambulation without the use of a hand-held assistive device(s) that
> limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of
> sustaining a reasonable walking pace over a sufficient distance to
> be able to carry out activities of daily living. They must have the
> ability to travel without companion assistance to and from a place
> of employment or school. Therefore, examples of ineffective
> ambulation include, but are not limited to, the inability to walk
> without the use of a walker, two crutches or two canes, the
> inability to walk a block at a reasonable pace on rough or uneven
> surfaces, the inability to use standard public transportation, the
> inability to carry out routine ambulatory activities, such as
> shopping and banking, and the inability to climb a few steps at a
> reasonable pace with the use of a single hand rail. The ability to
> walk independently about one's home without the use of assistive
> devices does not, in and of itself, constitute effective ambulation.

[6] Listing 1.00(B)(2)(c) explains the meaning of "an inability to perform fine and gross movements effectively" as follows:

> Inability to perform fine and gross movements effectively means
> an extreme loss of function of both upper extremities; i.e., an
> impairment(s) that interferes very seriously with the individual's
> ability to independently initiate, sustain, or complete activities. To
> use their upper extremities effectively, individuals must be capable
> of sustaining such functions as reaching, pushing, pulling,
> grasping, and fingering to be able to carry out activities of daily
> living. Therefore, examples of inability to perform fine and gross
> movements effectively include, but are not limited to, the inability
> to prepare a simple meal and feed oneself, the inability to take care
> of personal hygiene, the inability to sort and handle papers or files,
> and the inability to place files in a file cabinet at or above waist
> level.

In reaching this conclusion, I specifically considered all Listings under 1.00, specifically Listings 1.02, 1.03, and 1.06, for the degenerative joint disease, reconstruction of her feet, and fractured hip . . . . I find that the medical evidence of record, as discussed more fully below in Finding Five, does not contain the requisite neurological, clinical, or diagnostic findings to support presumptive disability under any of the listed impairments in the Regulations or Rulings.

First, particular attention was given to Listing 1.02 for dysfunction of major joints and degenerative joint disease in [Plaintiff]'s left ankle and left foot (Exhibit 15F/56-57). However, the specified criteria required by the Listing was not demonstrated by the available medical evidence. Specifically, the Listing requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankyloses of the affected joint. The Listing also requires involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively as defined in 1.00(B)(2)(c) or involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

Furthermore, [Plaintiff] testified that she sometimes uses a cane because of her toe deformities (HT). However, there is no evidence that [Plaintiff] was prescribed a cane or that the use of a cane was recommended by a doctor in order to ambulate. Similarly, x-ray taken of [Plaintiff]'s ankle and foot show some degenerative changes, but imaging studies of [Plaintiff]'s left hip and left knee are generally unremarkable (Exhibits 6F/1; 8F/9; 10F/3; 14F/1-2; 15F/39-41; 15F/56-57). Overall, the record contains insufficient objective evidence that [Plaintiff] is unable to ambulate effectively due problems with a weight-bearing joint. For example, [Plaintiff] testified that she is able to climb the 12 stairs in her home and drive a car (HT). [Plaintiff] stated that she goes grocery shopping with a friend, not because she has difficulty ambulating, but because she does not like to be alone (HT). Thus, the evidence does not demonstrate that [Plaintiff] has difficulty effectively ambulating, as defined in 1.00(B)(2)(c).

ECF No. 6 at 32–33. The ALJ continues to discuss other Listings and states that "the record,

consistent with the findings below, failed to demonstrate an inability to ambulate effectively, as

defined in 1.00B2b" and "there is little evidence that [Plaintiff] did not return to effective ambulation." *Id.* at 33. The ALJ's reasoning therefore outlined the symptoms required by Listing 1.02 and identified the listed symptoms that were not supported by Plaintiff's medical record, specifically Plaintiff's ability to ambulate. Furthermore, the ALJ cited multiple exhibits in the record to support his findings and explained his reasoning, including support from the record, in his step three and step four discussions, noting:

> Although [Plaintiff] alleged that she uses a cane to ambulate, there is little medical evidence showing that [Plaintiff] requires a cane to ambulate. Notably, [Plaintiff] did not bring a cane with her to the hearing but rather testified that her cane was in her car, which she drove to the hearing (HT).

*Id.* at 37.

Plaintiff insists that the record contains sufficient evidence to support a determination that she met or equaled Listing 1.02. ECF No. 15-1 at 9. Specifically, Plaintiff states that "if the ALJ had carefully reviewed and considered the totality of the medical evidence of record and [Plaintiff]'s own reports and testimony as described herein (which does show ambulation difficulties on a regular basis), he may very well have concluded differently regarding her ability to ambulate, particularly the specific notation in Listing 1.00B2b, that ability to walk independently without an assistive device around one's home does **NOT in and of itself constitute effective ambulation**" and she points to evidence which contradicts the ALJ's findings regarding her ambulation, medical records showing abnormal findings regarding her gait, range of motion, and instability, and her use of prescription pain medication. *Id.* at 9–10 n.2 (emphasis in original). Even if Plaintiff's evidence supported a conclusion that Plaintiff met Listing 1.02, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial

14

evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, while there may be substantial evidence in the record that would support a finding of disability, in addition to substantial evidence supporting the ALJ's contrary finding, this Court should not disturb the ALJ's conclusion so long as it is one of the conclusions supported by substantial evidence. Therefore, in light of the evidence in the medical record related to Plaintiff's ability to ambulate as discussed at step four, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal Listing 1.02 and must affirm.

## C. Substantial Evidence Supports The ALJ's RFC Determination.

Where a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must then assess the claimant's RFC. RFC assesses "the maximum degrees to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 404.1545(a) (ordering the ALJ to consider the entire record); SSR 96-8p, at *2 (defining RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Thus, the ALJ must also consider, and may rely on, the opinions of non-treating sources. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). As is the case with the opinions of physicians and psychologists, the ALJ is required to weigh the opinions of non-treating sources and explain the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). If more than one impairment is present, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." (citation omitted)).

Social Security Ruling 96–8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the [ALJ] must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96–8p, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96–8p). "Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96–8p).

During its step four evaluation, the ALJ determined that Plaintiff could "perform light work" with the following limitations:

> [Plaintiff] would be limited to lifting up to 20 pounds occasionally and 10 pounds frequently, standing and walking for at least two hours, and sitting for up to six hours in an eight-hour workday with normal breaks. [Plaintiff] would be limited to never climbing ladders, ropes, or scaffolds; occasionally stooping, occasionally crouching, and frequently climbing ramps or stairs. [Plaintiff] would need to occasionally avoid exposure to excessive noise. She would need to occasionally avoid exposure to environment irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas. [Plaintiff] would need to occasionally avoid the use of moving machinery and exposure to unprotected heights.

ECF No. 6 at 34. Plaintiff challenges the ALJ's RFC determination, arguing that substantial evidence does not support the RFC determination because the ALJ (1) erroneously evaluated Plaintiff's credibility and (2) failed to give proper weight to the opinion of the examining physician and the State agency medical consultants. ECF No. 15-1 at 11–20. Plaintiff's arguments are unavailing.

1. The ALJ properly determined Plaintiff's credibility.

Relying on *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017), Plaintiff contends that the ALJ inappropriately determined her credibility by relying on objective medical findings or the lack thereof rather than her subjective statements and by failing to explain how Plaintiff's statements undercut her credibility. ECF No. 15-1 at 11–15. According to Plaintiff, the ALJ had more than ample objective medical findings to support the existence of Plaintiff's subjective symptoms and complaints, but the ALJ contradicts himself by noting various findings in the medical records to support a finding of ineffective ambulation and impermissibly "playing doctor" and "cherry picking" findings to undercut Plaintiff's medical records showing her disability. *Id.* at 14–16 (emphases omitted). Defendant argues that the ALJ provided three

17

rationales for finding that Plaintiff's subjective statements were not entirely credible, namely that Plaintiff's statements were undermined by Plaintiff's daily activities, work history, and medical records which contained little objective evidence to support her allegations. ECF No. 18-1 at 13–15. The Court agrees with Defendant.

The Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and her treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3).

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain. 20 C.F.R. § 404.1529; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render the claimant incapable of working independent of any physical limitation, but allegations

18

of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the claimant's] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

Regarding Plaintiff's pain, the ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms [are] not fully supported by the objective medical evidence and other relevant evidence considered herein." ECF No. 6 at 35. The ALJ explained his reasoning as follows:

> First, I find that [Plaintiff]'s activities of daily living are not entirely consistent with her allegation of totally disabling physical symptoms and limitations. [Plaintiff]'s own statements indicate that she is able to live alone in a two-story house and that she is able to climb 12 stairs to her bedroom. She testified that she maintains her activities of daily living independently and that a typical day consists of her preparing simple meals, performing in light cleaning and dusting around the house, and watching television. She stated at the hearing that she is able to drive and that she sometimes uses a cane, although she acknowledged that she did not bring her cane to the hearing. [Plaintiff] testified that she travels to see her mother every other weekend, and she reported that she is able to vacuum, do laundry, and dust.
>
> In a function report, dated March 24, 2013, [Plaintiff] stated that she was able to shop in stores for food, cleaning supplies, and

personal items every other week for a couple of hours at a time. Additionally, [Plaintiff] stated that she reads daily, does puzzles and crossword puzzles regularly, visits friends, and talks on the phone to others every day. [Plaintiff] noted that she does not need to be accompanied when she goes places and that she is able to wash dishes. In a function report, dated December 24, 2013, [Plaintiff] indicated that she shops in stores on a regular basis. Such activities of daily living require significant physical demands, which are not consistent with the level of limitation [Plaintiff] alleges. Accordingly, I find that [Plaintiff]'s activities of daily living suggest a greater degree of functional capability than claimed.

Second, I find that [Plaintiff]'s work history, or lack thereof, does not support her claim that she is unable to work because of her severe impairments. Notably, [Plaintiff] reported that she held a job as a cook at a restaurant for at least eight years at one time, from 2003 through 2011, and she only left the job because she was laid off. [Plaintiff] primarily alleges that she is disabled due to injuries secondary to accidents that occurred in 1988 and 1994, yet [Plaintiff] worked through 2011. Although there is no evidence that she has worked at any point thereafter, the medical evidence does not indicate that [Plaintiff]'s impairments caused any substantial interruption in her capacity for work, as discussed in greater detail below. Rather, it would appear that her perceived inability to work is almost entirely subjective. I simply cannot base a finding of disability on [Plaintiff]'s personal belief that she cannot hold a job. Thus, I find that [Plaintiff]'s work history, and her statements with respect thereto, do not lend support to her alleged disability.

Further, [Plaintiff]'s longitudinal medical history is not necessarily consistent with her allegation of total disability. . . .

Although [Plaintiff] sustained injuries as a result of accidents that occurred decades ago, as of the alleged onset date of disability, imaging studies and the medical records as a whole were generally unremarkable. . . .

*Id.* at 35–36 (internal record citations omitted). The ALJ continued to discuss several times when Plaintiff sought medical treatment as a result of pain in 2012 through 2015, determining that "[a]lthough the evidence indicates that [Plaintiff] suffered injuries from accidents occurring decades ago and that she has some residual effects from these injuries, including deformed toes,

a review of the medical evidence as of the alleged onset date of disability is insufficient to show that [Plaintiff] would be more limited than indicated in the above [RFC]." *Id.* at 36–37. In sum, the ALJ stated that "[t]he medical evidence and other evidence of record suggest that [Plaintiff] can sustain a greater capacity than she described at the hearing" and concluded that Plaintiff's "subjective complaints and alleged limitations are not fully persuasive." *Id.* at 39.

While the ALJ improperly relied on some impermissible objective medical evidence under *Lewis*, he also relied on sufficient subjective evidence to find that Plaintiff was not credible. In particular, the ALJ acknowledged Plaintiff's testimony about the pain symptoms caused by her physical impairments and pointed to several facts which were inconsistent with Plaintiff's claims regarding her pain and limitations. First, the ALJ referenced Plaintiff's own testimony that she performs some daily living activities, including cleaning and cooking, driving, and living alone in a two-story house with twelve stairs. *Id.* at 35, 37. Therefore, by considering Plaintiff's own testimony, the ALJ properly determined that the evidence contradicted Plaintiff's subjective claims regarding her impairments and their impact on her ability to work. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where the claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Rahe v. Astrue*, 840 F.Supp.2d 1119, 1136 (N.D.Iowa 2011) (finding that substantial evidence in the record of claimant's reported activities supported the ALJ's adverse credibility determination where the claimant had "reported activities of daily living including preparing meals, completing household chores,

laundry, and shopping, activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations").

In addition, the ALJ noted inconsistencies regarding Plaintiff's ability to ambulate, specifically that "[a]lthough [Plaintiff] alleged that she uses a cane to ambulate, there is little medical evidence showing that [Plaintiff] requires a cane to ambulate. Notably, [Plaintiff] did not bring a cane with her to the hearing but rather testified that her cane was in her car, which she drove to the hearing." ECF No. 6 at 37 (record citation omitted). Lastly, the ALJ considered that Plaintiff worked for several years before the alleged onset date and that she stopped working because she was laid off, not because of pain or other symptoms. *Id.* at 36; *see Cauthen v. Finch*, 426 F.2d 891, 892 (4th Cir. 1970) (per curiam) (finding that a claimant is not entitled to disability benefits where the claimant worked regularly for many years with longstanding impairments). Therefore, the ALJ's detailed evaluation of the record evidence against Plaintiff's statements regarding her symptoms amply supports the ALJ's conclusion that Plaintiff's alleged limitations were not entirely credible, and the ALJ properly evaluated Plaintiff's credibility, supporting his findings with substantial evidence.

> 2. The ALJ properly weighed the testimony of Plaintiff's examining physician in making his RFC determination.

Plaintiff contends that the ALJ erroneously afforded, without proper justification, some weight to the opinion of Dr. Barbera, an examining physician, and great weight to the State agency medical consultants' opinions which were based on a "mere cursory review of available medical evidence years prior to the hearing in February 2016, which did not include much more recent substantial medical evidence." ECF No. 15-1 at 19–20 (emphasis omitted). Plaintiff is incorrect.

As this Court previously noted, "an ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider 'all of the relevant medical and other evidence.'" *Jackson v. Comm'r, Soc. Sec.*, No. CCB-13-2086, 2014 WL 1669105, at *2 (D.Md. Apr. 24, 2014); *see also* 20 C.F.R. §§ 404.1545(a) (ordering that an ALJ consider the entire record). Thus, an ALJ must consider, and may rely on, the opinions of non-treating medical sources, such as an examining physician or State agency consultant. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). As is the case with the opinions of physicians and psychologists, the ALJ is required to weigh the opinions of non-treating sources and explain the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (quoting *King*, 599 F.2d at 599).

When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Dunn v. Colvin*, 607 F.App'x 264, 267 (4th Cir. 2015) (quoting *Johnson*, 434 F.3d at 654). "[A] non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by *all of the other evidence* in the record." *Smith*, 795 F.2d at 345 (emphasis in original) (citation omitted). However, "the testimony of a non-examining physician can be relied upon when it is consistent with the record." *Id.* at 346 (citation omitted). "An

ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn*, 607 F.App'x at 267 (internal citations omitted).

In this case, the ALJ assigned some weight to Dr. Barbera's opinion and great weight to the State agency medical consultants' assessments, articulating his reasoning as follows:

> First, Dr. Barbera conducted a consultative examination, dated February 10, 2011. He observed that [Plaintiff] used a cane and opined that [Plaintiff] would have some difficulty with prolonged standing, walking, traveling, lifting, and carrying. I have given some weight to this opinion due to the lack of probative value for the period being adjudicated at present. Although Dr. Barbera's opinion provides insight into the severity of [Plaintiff]'s impairments and how they affect her ability to function, Dr. Barbera's opinion is vague and does not provide specific function-by-function limitations with regard to the extent of [Plaintiff]'s physical functioning. Nonetheless, Dr. Barbera's opinion is generally consistent with the findings of Drs. Burke and Totoonchie, which limit [Plaintiff]'s ability to lift, carry, stand, and walk. Therefore, I have allotted some weight to Dr. Barbera's opinion.
>
> State agency medical consultant Margaret Burke, M.D., found, on April 26, 2013, that [Plaintiff] would be limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and walking for two hours, and sitting for six hours in an eight-hour workday. Dr. Burke opined that [Plaintiff] would be limited to never climbing ladders, ropes, or scaffolds, frequently climbing ramps or stairs, and occasionally crouching. Moreover, Dr. Burke found that [Plaintiff] should avoid concentrated exposure to hazards and environmental irritants. On January 13, 2014, Dr. A.R. Totoonchie, M.D. affirmed Dr. Burke's findings.
>
> The State agency medical consultants' physical assessments have been given great weight because they are consistent with [Plaintiff]'s longitudinal medical treatment, the consultants are experts in medical issues in disability determination, and the findings are consistent with the objective diagnostic testing and clinical findings during physical examinations throughout the record. Specifically, the findings are consistent with the generally

> normal physical examinations and imaging studies throughout the
> record. Therefore, absent medical opinions to the contrary, I have
> generally adopted and given great weight to the findings of Drs.
> Burke and Totoonchie, as indicated in the above [RFC].

ECF No. 6 at 38–39 (internal record citations omitted). Here, while the ALJ assigned "great weight" to the opinions of State agency consultants who never examined or treated Plaintiff, he did so because their opinions were supported by the medical evidence as a whole. *Id.* at 34, 39. Moreover, the ALJ assigned Dr. Barbera's opinion "some weight," not "no weight," because Dr. Barbera's opinions were vague and did not specify the meaning of "some difficulty" with respect to prolonged standing, walking, and traveling as well as lifting and carrying objects. Further, the ALJ relied upon the treatment notes from Plaintiff's medical appointments and Plaintiff's reports of her daily activities in determining the RFC assessment, which are consistent with the opinions of Dr. Barbera and the two State agency consultants. *Id.* at 36–39. Accordingly, the ALJ did not err in weighing the physicians' opinions, and thus, his RFC analysis is consistent with the medical evidence of record and rests on a sufficient evidentiary basis.

## D. The ALJ Properly Considered The VE's Opinion.

Lastly, Plaintiff disagrees with the ALJ's consideration of the VE's opinion, arguing that the ALJ erred when he (1) posed a hypothetical to the VE with limitations which were not supported by substantial evidence; and (2) accepted a response from the VE which was inconsistent with the Dictionary of Occupational Titles ("DOT"). The Court disagrees.

> 1. The ALJ properly posed hypotheticals to the VE and considered the VE's response.

The Commissioner employs VEs to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)–(c), 416.960(b)–(c). The VE may respond to a hypothetical about a person "with

the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker*, 889 F.2d at 50). "A hypothetical question is unimpeachable if it adequately reflects a [RFC] for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F.App'x 359, 364 (4th Cir. 2006) (per curiam) (internal quotation marks omitted) (emphasis omitted) (quoting *Johnson*, 434 F.3d at 659).

In the present case, all of the limitations in Plaintiffs RFC were properly included in the ALJ's hypothetical to the VE. At step four of the sequential evaluation, the ALJ determined that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 416.1567(b) and 416.967(b) except [Plaintiff] would be limited to lifting up to 20 pounds occasionally and 10 pounds frequently, standing and walking for at least two hours, and sitting for up to six hours in an eight-hour workday with normal breaks. [Plaintiff] would be limited to never climbing ladders, ropes, or scaffolds; occasionally stooping, occasionally crouching, and frequently climbing ramps or stairs. [Plaintiff] would need to occasionally avoid exposure to excessive noise. She would need to occasionally avoid exposure to environment irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas. [Plaintiff] would need to occasionally avoid the use of moving machinery and exposure to unprotected heights.

ECF No. 6 at 34. Consistent with that conclusion, during the hearing, the ALJ posed the following hypothetical question to the VE:

> I want you to consider a hypothetical individual of the same age, education and past work history as [Plaintiff]. This hypothetical individual will be limited to lifting up to 20 points occasionally, 10 pounds frequently.

> Stand and walk for at least two hours and sit for up to six
> hours in an eight-hour workday, with normal breaks. This
> hypothetical individual would be limited to no ladders, ropes or
> scaffolds, with occasional stooping and occasional crouching and
> frequent ramps or stairs.
>
> This hypothetical individual would need to occasionally
> avoid exposure to excessive noise. Would need to occasionally
> avoid exposure to environmental irritants, such as fumes, odors,
> dusts, gases and poorly ventilated areas.
>
> This hypothetical individual would need to occasionally
> avoid the use of moving machinery and exposure to unprotected
> heights. Could an individual with these limitations perform
> [Plaintiff]'s past work as it was generally performed or actually
> performed per the DOT?

*Id.* at 75–76. The VE testified that only about half of the jobs consistent with Plaintiff's prior

cashiering work have a sit-stand option and she identified three jobs consistent with the ALJ's

hypothetical, answering that all three included some level of sit-stand option. *Id.* at 76. The ALJ

then asked a second hypothetical:

> [A]gain I want you to consider a hypothetical individual with the
> same age, education and past work experience as [Plaintiff]. In
> this hypothetical, I want you to consider limitations in the first
> hypothetical, with the addition of this hypothetical individual, in
> addition to the regularly scheduled breaks, would need to be
> allowed to be off task 20 percent of the day, due to pain and
> symptoms associated with her medical condition.
>
> Can an individual with these limitations perform any of
> [Plaintiff]'s past work?

*Id.* at 77. The VE responded, "No[.]" *Id.*

Here, Plaintiff posits that the hypothetical with its limitations, as premised on the RFC

assessment, was deficient because the RFC assessment was not supported by substantial

evidence. ECF No. 15-1 at 23–24. Plaintiff also contends that the ALJ erred by failing to

consider and accept the VE's response to the second hypothetical which Plaintiff contends was

consistent with her testimony and functional report statements. *Id.* Both arguments fail because an ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (per curiam). Moreover, "based on his or her evaluation of the evidence, an ALJ is free to accept or reject restrictions included in hypothetical questions . . . ." *France v. Apfel*, 87 F.Supp.2d 484, 490 (D.Md. 2000). As discussed above, the ALJ provided substantial evidence to reject some of the more severe limitations suggested by Plaintiff and to support the restrictions included in the RFC assessment. Thus, the ALJ did not err in posing his hypothetical nor in considering the VE's testimony.

> 2. The ALJ properly considered the VE's response that her opinion was consistent with the DOT.

Plaintiff argues that the ALJ committed error when he accepted a response to a hypothetical question from the VE which was inconsistent with the DOT and not responsive to the hypothetical RFC posed. ECF No. 15-1 at 24. Specifically, Plaintiff opines that the RFC limitations were ambiguous and inconsistent and failed to account for time off task. *Id.* at 24–26.

Social Security Ruling 00–4p clarifies 20 C.F.R. § 404.1566, which states, without more, that ALJs will consider both the DOT and VE testimony to determine whether a Social Security claimant can find work suited to his RFC. SSR 00-4p explains that its purpose is to require the ALJ (not the VE) to "[i]dentify and obtain a reasonable explanation" for conflicts between the VE's testimony and the DOT, and to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." 2000 WL 1898704, at *1 (Dec. 4, 2000). The Ruling then proceeds to require that the ALJ undertake exactly these responsibilities. First, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information

provided in the DOT;" and second, "[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* at *4. Notably, this second requirement is so independent of the first that it does not rest on the VE's identification of a conflict. Rather, SSR 00–4p directs the ALJ to "resolve the conflict by determining if the explanation given by the VE . . . is reasonable," *id.* at *2, and to "explain the resolution of the conflict irrespective of how the conflict was identified," *id.* at *4.

Here, during the hearing, the ALJ expressly asked the VE whether her testimony was consistent with the DOT, and if not, asked her to explain the conflict. ECF No. 6 at 77. The VE answered that her testimony was consistent with the DOT and that "the jobs that [she] offered, the sit/stand information, as well as the off task information from the second hypothetical, that's based on [her] experience in the field observing the jobs and speaking with employees." *Id.* Based on this testimony, at step five of his analysis, the ALJ determined that the VE's testimony was consistent with the information contained in the DOT. *Id.* at 41.

As the record shows, the ALJ directly questioned the VE about the consistency of her testimony and the DOT and the VE provided a sufficient explanation, referencing her prior relevant experience. *See Fisher*, 181 F.App'x at 365 (recognizing that an ALJ may rely on conflicting VE testimony if he finds that it is based on another reliable publication or the VE's own experience in job placement or career counseling (citing SSR 00-4p)). In this manner, the ALJ identified and addressed any possible conflict between Plaintiff's sit-stand and off task limitations and the DOT job descriptions, and the VE provided an explanation upon which the

ALJ was entitled to rely.[7] Thus, substantial evidence supports the ALJ's findings, and the Court affirms the decision of the ALJ.

<h2 style="text-align:center">CONCLUSION</h2>

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Act from May 16, 2011 through the date of the ALJ's decision. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 22 February 2018

A. David Copperthite
United States Magistrate Judge

---

[7] While the Court's analysis is the same regardless of the existence of a conflict, the Court does not find that a conflict exists in this case between the ALJ's RFC assessment for a limited range of light work and the lights jobs which the VE testified that Plaintiff could perform. Notably, the regulations indicate that light work includes jobs that "involve[] sitting most of the time," as well as jobs which may require standing and walking a "good deal" of the time. 20 C.F.R. §404.1567(b). Furthermore, this Court has noted that it can be "perfectly acceptable for the ALJ to classify Plaintiff's RFC as permitting limited light work rather than sedentary work" and that "the crucial issue is that the ALJ asked the VE to consider all of Plaintiff's RFC abilities and limitations, and the VE opined that there are jobs that Plaintiff could perform." *Reynolds v. Astrue*, No. SKG-11-559, 2012 WL 1107649, at *21 (D.Md. Mar. 30, 2012) (emphasis omitted).